Lead Counsel: Jotham S. Stein (ARDC No. 6288625)
Benjamin C. Price (ARDC No. 6301926)
**LAW OFFICES OF JOTHAM S. STEIN**
115 Campbell Street, Suite 206
Geneva, Illinois 60134
Tel: 630-845-3385
Fax: 630-845-3345

Attorneys for plaintiff Bradley Davis

# UNITED STATES DISTRICT COURT

## for the

## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **BRADLEY DAVIS**<br><br>      **Plaintiff,**<br>   vs.<br><br>**UNITED PARCEL SERVICE, INC.**<br><br>      **Defendant.** | Civil Action No.: _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. Violation of 42 U.S.C. § 12101 et seq. Disability Discrimination: Failure to Accommodate<br>2. Violation of 42 U.S.C. § 12101 et seq. Disability Discrimination: Disparate Treatment<br><br>**Division: Urbana** |

Plaintiff Bradley Davis ("Davis") brings this Complaint against United Parcel Service, Inc. ("UPS") and alleges on information and belief as follows:

## INTRODUCTION

1.  Mr. Davis worked for more than 20 years for UPS. Mr. Davis worked for more than 17 years as a package truck ("Package Truck") driver for UPS delivering packages to homes and businesses in and around Mattoon, Illinois. UPS Package Trucks are the brown delivery trucks that deliver packages around the world. They are featured in UPS' advertisements. One day in his 21st year on the job, Mr. Davis blew out his knee while working for UPS and was significantly and permanently disabled. As a result of his injury, Mr. Davis can no longer repeatedly lift packages from the ground or from within 17 inches of the ground.

2.  Mr. Davis is fully capable of driving a UPS feeder truck ("Feeder Truck"), which is a big 18 wheeler (semi) long-haul over the road truck that UPS uses to transport packages between UPS locations within four to six hours of each other. Feeder Truck drivers do not lift boxes. Rather, they drive their semis between UPS locations and back their semi trailers into UPS loading stations for others to load and unload. Mr. Davis' permanent disability does not prevent him from working as a Feeder Truck driver.

3.  Mr. Davis blew out his knee in August 2004. Mr. Davis had reconstructive surgery in December 2004. Mr. Davis received a permanent disability award from the Illinois Workers' Compensation Commission on or about July 12, 2007. UPS knows all about Mr. Davis' disability.

4.  UPS discriminated against Mr. Davis based on his disability, in violation of the Americans with Disabilities Act ("ADA") on at least three separate occasions in 2009 when it refused to hire him for open positions which he was fully capable of performing and for which

he held the highest seniority rank.

5. On or about September 26, 2008, UPS posted a bid sheet for Feeder Truck driver positions at its Mattoon, Illinois location ("Bid Sheet"). The job requirements for the Feeder Truck driver position do not require repeated lifting of objects from within 17 inches of the ground, and Mr. Davis satisfied all posted and actual requirements. Thus, Mr. Davis was fully qualified for the posted Feeder Truck driver position. UPS stated on the Bid Sheet that it would fill open positions according to seniority.

6. Mr. Davis was first in seniority of those who applied on the September 2008 Feeder Truck driver Bid Sheet.

7. UPS often uses bid sheets for approximately a year to fill open positions. UPS used the Feeder Truck driver Bid Sheet – with Mr. Davis as first in seniority – for about a year. On at least three separate occasions in 2009, UPS refused to hire Mr. Davis for open Feeder Truck driver positions because of Mr. Davis' disability and because UPS regarded Mr. Davis as disabled, even though Mr. Davis held the highest seniority and even though Mr. Davis was fully able to perform the long haul over the road job.

    a. First, in or about July 2009, UPS discriminated against Mr. Davis by offering the open Feeder Truck driver position to a non-disabled applicant on the Bid Sheet with lower seniority than Mr. Davis. The lower seniority employee offered the open Feeder Truck driver rejected the position after about a week.

    b. Second, in or about August 2009, after the lower seniority employee rejected the Feeder Truck driver position, UPS again discriminated against Mr. Davis by moving the once-again-open Feeder Truck driver position to a different UPS location (Decatur, Illinois) and hiring another non-disabled driver, rather than Mr.

        Davis to be a Feeder Truck driver. By moving the Feeder Truck driver position to Decatur, rather than hire Mr. Davis because he is disabled, UPS increased its costs by approximately $400 to $500 per week for the Feeder route.

    c.    Third, in or about August or September 2009, UPS discriminated against Mr. Davis when it opened and filled a new Mattoon, Illinois Feeder Vacation Coverage driver position by hiring a driver from the Bid Sheet with less seniority than Mr. Davis. Feeder Vacation Coverage drivers spend most of their time driving Feeder Truck routes. When they are not driving Feeder Truck routes, Feeder Vacation drivers are sometimes asked to drive Package Truck routes. However, Mr. Davis' UPS company seniority was sufficiently high that he would not have had to drive Package Trucks as a Feeder Vacation Coverage driver in UPS' Mattoon location (even if Mr. Davis' company seniority was not sufficiently high, UPS' obligation to reasonably accommodate Mr. Davis would have required it to hire him for the job). UPS used the Bid Sheet to hire for the Feeder Vacation Coverage driver position and applied the same hiring rules, including the rule that the applicant with the highest seniority would receive the position. Rather than hire Mr. Davis, who had the highest seniority for the new position, UPS offered the position to a non-disabled applicant with the third-highest seniority.

8.    UPS' refusal to hire Mr. Davis for the positions discussed above as well as other positions also constitutes a failure by UPS to reasonably accommodate Mr. Davis, who, as explained above, was disabled while working as a UPS Package Truck Driver.

9.    UPS continues to discriminate against Mr. Davis because of his disability in

violation of the ADA, in part by refusing to hire Mr. Davis for open positions (such as a Feeder Truck driver) for which he is eligible and qualified, and in part by failing to reasonably accommodate his disability. UPS has continuously refused to offer any reasonable accommodation to Mr. Davis, as required by the ADA.

## PARTIES

10.     Plaintiff Bradley Davis is an individual who resides in Coles County, Illinois. Mr. Davis was an outstanding employee of defendant UPS at its Mattoon, Illinois location for more than 20 years. Mr. Davis is currently an "inactive" employee at UPS. Mr. Davis has been an "inactive" UPS employee at all times from 2006 to the present.

11.     Defendant United Parcel Service, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia. UPS has facilities throughout the United States, including in Mattoon, Illinois. UPS is generally in the business of the transport and delivery of packages.

## VENUE AND JURISDICTION

12.     This Court has federal question jurisdiction over this action. Mr. Davis alleges violations of the Americans with Disabilities Act , 42 U.S.C. § 12101 *et seq*. 42 U.S.C. § 12117 grants persons aggrieved under the ADA the right to file a civil action in United States District Court, after receiving a right to sue notice from the Equal Employment Opportunity Commission ("EEOC"), pursuant to 42 U.S.C. § 2000e-5. Mr. Davis received a Notice of Right to Sue on March 23, 2011 ("Notice"). The Notice is dated March 22, 2011 and attached as Exhibit A to this Complaint.

13.     42 U.S.C. § 2000e-5(f)(3) provides that venue is proper in the United States District Court in which the unlawful unemployment practice was committed. The actions giving rise to this complaint took place in Coles County, Illinois, which is in the Central District of

Illinois. Pursuant to CDIL-LR 40.1(D), the Urbana Division of the Central District of Illinois is the appropriate venue for complaints arising from Coles County, Illinois.

### ESTOPPEL TO PLEAD THE STATUTE OF LIMITATIONS

14. Plaintiff realleges and incorporates by reference paragraphs 1 through 13 above.

15. From the date Mr. Davis blew out his knee in August 2004, Mr. Davis was a class member of the plaintiff class in *Hohider, et al. v. UPS*, Civil Action No. 04-0363, W.D. Pa. (J. Conti) ("*Hohider*"). *Hohider* was filed on March 10, 2004 as a class action lawsuit against UPS. The *Hohider* class plaintiffs alleged, among other things, that UPS has an illegal policy of denying reasonable accommodation to its disabled employees in violation of the ADA, and that UPS treats employees who make reasonable accommodation request differently and less favorably than other employees.

16. The United States District Court for the Western District of Pennsylvania certified the *Hohider* class as an opt-out class on July 16, 2007.

17. The United States Court of Appeals for the Third Circuit decertified the *Hohider* class on July 23, 2009.

18. Shortly after the Third Circuit decertified the *Hohider* class, UPS signed a Tolling Agreement ("UPS Tolling Agreement"), tolling all potential class members' federal disability discrimination claims to allow the parties to settle the lawsuit. The named plaintiffs in the *Hohider* class settled the lawsuit on or about August 31, 2010.

19. Mr. Davis' 300 day period in which to file an ADA charge with the EEOC began running, at the earliest, when the *Hohider* class was decertified on July 23, 2009. The 300 day period was then tolled by the UPS Tolling Agreement from August 28, 2009 until, at the earliest, August 31, 2010. Mr. Davis' remaining 264 day period in which to file a charge with the EEOC

would have ended, at the earliest, on May 22, 2011.  Mr. Davis filed his EEOC charge on or about December 14, 2010, well before the time period to file the charge expired.

20. Therefore, UPS is affirmatively estopped from pleading any statute of limitations defense against the claims Mr. Davis alleges in this Complaint.

**EXHAUSTION OF ADMINISTRATIVE RELIEF**

21. Plaintiff realleges and incorporates by reference paragraphs 1 through 20 above.

22. Mr. Davis filed a charge with the Chicago District Office of the EEOC on December 14, 2010 against UPS in connection with UPS' discrimination against him at its facility at 2321 Shelby Avenue, Mattoon, Illinois.  Mr. Davis' charge was assigned EEOC Charge Number 440-2011-01383.

23. Mr. Davis received a Notice of Right to Sue from the EEOC on March 23, 2011. The Notice is attached as Exhibit A to this Complaint.

**FIRST CAUSE OF ACTION**

**(Violation of 42 U.S.C. § 12112 – Disability Discrimination: Failure to Accommodate)**

24. Plaintiff realleges and incorporates by reference paragraphs 1 through 23 above.

25. Mr. Davis was hired by UPS in Coles County, Illinois on or about January 13, 1984.

26. Mr. Davis became a full-time UPS employee on or about September 21, 1987, when he began working as a Package Truck driver in Coles County, Illinois.  Mr. Davis worked as a Package Truck driver until on or about August 27, 2004.

27. On or about August 27, 2004, Mr. Davis blew out his knee (was injured) while working for UPS.  As a result Mr. Davis' injury, Mr. Davis suffered significant and permanent damage to his knee.  Mr. Davis' disability prevents him from repeatedly lifting packages from

the ground or from within 17 inches of the ground.

28. At all times relevant to the allegations in this Complaint, UPS has been Mr. Davis' employer. UPS currently lists Mr. Davis as an "inactive employee" on UPS employee reports.

29. At all times relevant to the allegations in this Complaint, UPS has been fully aware of Mr. Davis' knee disability.

30. Mr. Davis' knee disability is a physiological disorder or condition that affects his musculoskeletal system.

31. Mr. Davis' knee disability impairs Mr. Davis in the major life activity of bending. Mr. Davis' knee disability substantially limits Mr. Davis in the major life activity of bending by permanently preventing Mr. Davis from repeatedly bending to within 17 inches of the ground.

32. Mr. Davis' knee disability impairs Mr. Davis in the major life activity of reaching. Mr. Davis' knee disability substantially limits Mr. Davis in the major life activity of reaching by permanently preventing Mr. Davis from repeatedly reaching within 17 inches of the ground.

33. Mr. Davis' knee disability impairs Mr. Davis in the major life activity of lifting. Mr. Davis' knee disability substantially limits Mr. Davis in the major life activity of lifting by permanently preventing Mr. Davis from repeatedly lifting any object, of any weight, from within 17 inches of the ground.

34. Mr. Davis' knee disability impairs Mr. Davis in the major life activity of working. Mr. Davis' knee disability substantially limits Mr. Davis in the major life activity of working by significantly restricting Mr. Davis in his ability to perform as a Package Truck driver or other similar delivery truck driver. Mr. Davis' knee disability also substantially limits Mr. Davis in the major life activity of working by significantly restricting Mr. Davis in his ability to perform the

broad range of jobs requiring repeated lifting from within 17 inches of the ground.

35. UPS also regarded Mr. Davis as disabled by considering Mr. Davis incapable of performing any truck driving job, any heavy lifting job, or any job requiring bending and lifting of any object, on the basis of his knee disability.

36. After Mr. Davis had knee surgery and completed the rehabilitation of his knee (on or about September 15, 2005), Mr. Davis could perform many job duties at UPS. Mr. Davis is qualified for jobs that do not require repeated bending and lifting from within 17 inches of the ground, including any job as a clerk.

37. One position for which Mr. Davis is fully qualified is that of Feeder Truck driver, The Feeder Truck driver is not required to repeatedly lift packages or other items from within 17 inches of the ground.

38. As explained in ¶ 7c above, another position for which Mr. Davis is fully qualified is that of Feeder Vacation Coverage driver.

39. As explained above, on or about September 26, 2008, UPS posted the Bid Sheet opening bidding for Feeder Truck driving positions. Mr. Davis was first in seniority of those who applied on the Bid Sheet, and he fulfilled all requirements for the position.

40. As explained in ¶ 7 above, on at least three separate occasions in 2009, UPS refused to hire and refused to reasonably accommodate Mr. Davis for Feeder Truck and Feeder Vacation Coverage positions, on the basis of Mr. Davis' disability, even though Mr. Davis held the highest seniority of all job applicants and even though Mr. Davis was fully qualified for both positions.

41. UPS continues to discriminate against Mr. Davis on the basis of his disability by refusing to reasonably accommodate him and by refusing to hire him for positions for which he

is qualified and which he can perform.

42. UPS' refusal to transfer or hire Mr. Davis for the Feeder Truck driver positions is not only discrimination against Mr. Davis because he is disabled but also constitutes a failure to reasonably accommodate Mr. Davis. UPS has refused to make any reasonable accommodation for Mr. Davis and has denied him the ability to return to "active" work since on or about December 29, 2005, when UPS learned of Mr. Davis' permanent disability after Mr. Davis' completed the rehabilitation of his knee. UPS currently classifies Mr. Davis as an "inactive" employee.

43. In addition to discriminating against Mr. Davis and refusing to reasonably accommodate Mr. Davis as explained above and below, as alleged in the *Hohider* case, UPS has a policy of not allowing disabled employees (such as Mr. Davis) to return to any other position at UPS other than the position they held at the time they were injured. This UPS policy means that, as a matter of corporate policy, UPS refuses to reasonably accommodate disabled employees (such as Mr. Davis), by refusing to allow disabled employees (such as Mr. Davis) to fill positions (such as Feeder Truck driver positions) other than those positions they held on the day they were disabled.

44. As a result of UPS' disability discrimination and its refusal to reasonably accommodate Mr. Davis in violation of the ADA, Mr. Davis has suffered damages in an amount to be proven at trial.

45. UPS has acted oppressively, maliciously and with reckless indifference to the law, and for this reason Mr. Davis is entitled to an award of punitive and/or exemplary damages from UPS.

## SECOND CAUSE OF ACTION

**(Violation of 42 U.S.C. § 12112 – Disability Discrimination: Disparate Treatment)**

46.Plaintiff realleges and incorporates by reference paragraphs 1 through 45 above.

47.As explained above, Mr. Davis is a qualified individual with a disability.

48.As explained above, on at least three separate occasions in 2009, UPS refused to hire and train Mr. Davis for Feeder Truck and Feeder Vacation Coverage positions, on the basis of Mr. Davis' disability and because UPS regarded Mr. Davis as disabled, even though Mr. Davis held the highest seniority of all job applicants and even though Mr. Davis was fully qualified for the positions. Instead, UPS chose, hired and trained from the Bid Sheet other Package Truck drivers with similar employment histories but lower seniority or moved the position for which Mr. Davis was fully qualified to another location.

49.Mr. Davis met the legitimate expectations of UPS by maintaining an excellent work record for over twenty years, after which time UPS chose to put Mr. Davis on "inactive" employee status. UPS has never indicated dissatisfaction with Mr. Davis' work performance.

50.By refusing to hire Mr. Davis for a Feeder Truck driver position, UPS discriminated against Mr. Davis.

51.UPS also discriminated against Mr. Davis by refusing to train him for Feeder Truck driving position.

52.UPS further discriminated against Mr. Davis by refusing him the opportunity to continue to earn pension and health care benefits, which Mr. Davis cannot earn while an "inactive" employee.

53.All Package Truck drivers were similarly situated (except for seniority) with regard to the Bid Sheet, and all Package Truck drivers were to be judged, according to UPS,

according to the same seniority-based standard.  By refusing to hire Mr. Davis in favor of hiring non-disabled Package Truck drivers with lower seniority and by moving one Feeder Truck driving route to another location, UPS discriminated against Mr. Davis on the basis of his disability.

54. As a result of UPS' disability discrimination in violation of the ADA, Mr. Davis has suffered damages in an amount to be proven at trial.

55. UPS has acted oppressively, maliciously and with reckless indifference to the law, and for this reason Mr. Davis is entitled to an award of punitive and/or exemplary damages from UPS.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff Bradley Davis demands judgment against defendant United Parcel Service, Inc. as follows:

1. For general damages according to proof;

2. For compensatory and consequential damages according to proof;

3. For equitable relief of (a Court order requiring) restoration of pension and health benefits;

4. For equitable relief of (a Court order requiring) the return to an employment position which Mr. Davis is able to perform without accommodation or is able to perform with reasonable accommodation;

5. For punitive and/or exemplary damages;

6. For attorneys' fees and costs of suit pursuant to 42 U.S.C. § 12205 or otherwise;

7. For interest on accrued damages; and,

8. For all other relief as this Court deems just and proper.

                                            Respectfully submitted,

                                            **LAW OFFICES OF JOTHAM S. STEIN**

                                            By:_____/S/ Jotham S. Stein_____

Date:  April 4, 2011                      Jotham S. Stein, Esq. (Lead Counsel)
                                            Benjamin C. Price, Esq.

                                            Attorneys for plaintiff Bradley Davis

Jotham S. Stein (ARDC No. 6288625)
Benjamin C. Price (ARDC No. 6301926)
**LAW OFFICES OF JOTHAM S. STEIN**
115 Campbell St., Suite 206
Geneva, IL 60134
Tel:  630-845-3385
Fax: 630-845-3345

Attorneys for plaintiff Bradley Davis

UNITED STATES DISTRICT COURT

for the

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **BRADLEY DAVIS**  **Plaintiff**,  vs.  **UNITED PARCEL SERVICE, INC.**  **Defendant.** | Civil Action No.: _____  **JURY TRIAL DEMAND** |

Plaintiff Bradley Davis respectfully requests a jury trial in the above captioned matter.

Respectfully submitted,

**LAW OFFICES OF JOTHAM S. STEIN**

By:_____/S/ Jotham S. Stein_____

Date:  April 4, 2011

Jotham S. Stein, Esq. (Lead Counsel)
Benjamin C. Price, Esq.

Attorneys for plaintiff Bradley Davis